**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JENNIFER L. HERNANDEZ,

      Plaintiff,

      v.

ALEX DIBIASO and
MICHAEL KUSPER,

      Defendants.

No. 23-cv-15284

Judge Franklin U. Valderrama

**ORDER**

The Fair Housing Act (FHA) prohibits oral or written statements with respect to the sale or rental of a dwelling that indicate a "preference, limitation, or discrimination" based on certain protected statuses. 42 U.S.C. § 3604(c). Plaintiff Jennifer L. Hernandez (Hernandez) alleges that while living in a unit of a building owned by Defendant Alex DiBiaso (DiBiaso), Defendant Michael Kusper (Kusper), a tenant and the building manager, made repeated and unwelcome sexual advances toward her, which she rebuffed. Hernandez's complaints to DiBiaso went unaddressed, and eventually Hernandez was evicted. Hernandez sued Kusper and DiBiaso (collectively Defendants) for discriminatory statements and hostile environment sexual harassment under the FHA pursuant to 42 U.S.C. § 3604(c) and 24 C.F.R. § 100.600(a), respectively, as well as bringing several state law claims. R. 84, Second Amended Complaint (SAC).[1] Before the Court are Defendant Kusper's

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

motion to dismiss Counts I, III, and IV[2] of the SAC under Federal Rule of Civil Procedure 12(b)(6), as well as DiBiaso's motion to dismiss Count I as to the discriminatory statement claim[3] and Count II under Rule 12(b)(6). R. 95, Kusper Mot. Dismiss.; R. 97, DiBiaso Mot. Dismiss.

For the reasons that follow, Defendants' motions to dismiss the discriminatory statement claim in Count I is denied. Additionally, the Court denies DiBiaso's motion to dismiss Count II.

## Background[4]

DiBiaso owns a four-unit apartment building in Chicago (the Property). SAC ¶¶ 8–9. Kusper lives on the first-floor unit of the Property and performed property management tasks at the Property. *Id.* ¶¶ 8, 12–13. These tasks include showing units to prospective tenants and providing rental applications and leases to new tenants. *Id.* ¶ 14. Kusper also collected rent for tenants and sent it to DiBiaso. *Id.* ¶ 16. DiBiaso represents Kusper as the contact person for the property to tenants and prospective tenants and compensates him for his work by not charging him market-

---

[2]Kusper incorporates the arguments raised in his motion to dismiss the First Amended Complaint (FAC) as to the claims for hostile environment sexual harassment pursuant to 24 C.F.R § 100.600(a) (Count I), assault (Count III), and battery (Count IV) for purposes of preserving his arguments for appeal; however, he answered those Counts (R. 100) and acknowledges that the Court denied his motion to dismiss those Counts in the FAC. Kusper Mot. Dismiss at 2. Therefore, Kusper only makes arguments in support of dismissal of Count I's claim based on "discriminatory statements" pursuant to 42 U.S.C. § 3604.

[3]DiBiaso filed a partial answer to the SAC, answering the allegations in Count I, specific to violations of 24 C.F.R. §100.600(a). R. 96.

[4]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Hernandez. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

rate rent, with Kusper's rent only increasing once by $25 since 2013. *Id.* ¶¶ 20, 23, 24–25.

Hernandez saw an advertisement in a free newspaper for the second-floor apartment at the Property. SAC ¶ 29. The ad listed Kusper's phone number. *Id.* ¶ 30. Hernandez called the phone number listed in the advertisement and Kusper answered and arranged to show her the unit. *Id.* ¶ 31. Kusper met Hernandez at the Property and showed her around. *Id.* ¶ 32. Kusper told Herandez that DiBiaso does not live at the Property and allowed him to select tenants. *Id.* ¶¶ 32–33. A few days later Kusper called Hernandez and told her she could have the apartment. *Id.* ¶ 34. Hernandez then met Kusper at the Property, and he gave her a rental application to complete. *Id.* ¶¶ 35–36. Kusper signed DiBiaso's name on the lease. *Id.* ¶ 37. Hernandez filled out the application, signed the lease, and gave both to Kusper, along with the first month's rent and a security deposit. *Id.* ¶ 38. Kusper gave Hernandez the keys to the unit. *Id.* ¶ 39. Hernandez moved into the apartment with her family. *Id.* ¶ 40. Hernandez paid her rent to Kusper, which Kusper sent to DiBiaso. *Id.* ¶ 42. Kusper continued to perform property management tasks at the Property. *Id.* ¶ 41.

Soon after moving into the apartment, Kusper began making unwelcome sexual advances toward Hernandez. SAC ¶¶ 46–48. Kusper texted Hernandez telling her things like, "Babe I want to spend time with you adult time no kids." *Id.* ¶ 51. Kusper would text Hernandez multiple times per week telling her she was beautiful, asking her to come downstairs to his apartment, and asking her to go on dates. *Id.* ¶ 54. For example, Kusper sent the below texts to Hernandez:



*Id.* ¶ 53. Hernandez rejected or ignored these advances. *Id.* ¶ 52.

In addition to his texts, Kusper frequently stood outside his apartment door and when Hernandez came home, made sexual comments to Hernandez similar to those made over text. SAC ¶¶ 59–60. Hernandez rejected or ignored these advances. *Id.* ¶ 62. The comments made Hernandez feel unsafe. *Id.* ¶ 66.

Kusper also physically harassed her Hernandez. On one occasion, Kusper grasped Hernandez's breasts and buttocks without her consent. SAC ¶ 80. On other occasions, Kusper tried to hug and kiss her. *Id.* ¶ 82. On each occasion Hernandez resisted physically and told Kusper to stop. *Id.*

As time went on, with Hernandez repeatedly ignoring and rejecting Kusper's advances, Kusper retaliated by alleging noise complaints against Hernandez, refusing to fix things in her apartment, and using hostile tones and swear words in

his conversations with her. SAC ¶¶ 83–85. After Hernandez confronted Kupser about his harassment, Kusper turned even more hostile. *Id*. ¶ 87.

Hernandez complained to DiBiaso about Kusper's harassment, telling him that she did not feel safe or comfortable around Kusper. SAC ¶¶ 90, 93. Hernandez's mother also complained to DiBiaso about Kusper's behavior. *Id*. ¶ 89. DiBiaso brushed aside Hernandez's complaints and did nothing to stop the harassment. *Id*. ¶¶ 91, 94. The harassment continued even after Hernandez complained to DiBiaso about it. *Id*. ¶ 100. Notwithstanding the harassment, DiBiaso told Hernandez via text to give Kusper the rent, to which Hernandez responded she would only deal with DiBiaso. *Id*. ¶ 101. Kusper was on the text chain from DiBiaso to Hernandez. *Id*. ¶ 103.

Weeks later, Kusper texted Hernandez, telling her that DiBiaso was asking him about evicting her. SAC ¶ 105. Kusper told Hernandez that he was trying to protect her, and saying "[d]o you not understand that I am your friend if you talk to me I could f****** fix everything." *Id*. ¶ 106. The next text Kusper sent to Hernandez said, "I just want to see you . . . ." *Id*. ¶ 107. Kusper eventually served a notice of eviction on Hernandez, telling Hernandez that DiBiaso "told me I have to give this to you." *Id*. ¶ 109. During the pendency of the eviction, Kusper showed Hernandez's apartment to prospective tenants. *Id*. ¶ 110. DiBiaso eventually evicted Hernandez and her family. *Id*. ¶ 110.

Hernandez sued Defendants for discriminatory statements pursuant to 42 U.S.C. § 3604(c) and hostile environment sexual harassment pursuant to 24 C.F.R.

5

§ 100.600(a) (Count I). Hernandez also asserts a state law claim of negligence against DiBiaso (Count II) and state law claims of assault and battery against Kusper (Counts III–IV).

The Court granted in part and denied in part Defendants' motions to dismiss the First Amended Complaint (FAC). R. 83, FAC Order. Specifically, the Court dismissed without prejudice Hernandez's Count I claim regarding discriminatory statements pursuant 42 U.S.C. § 3604(c), as well as her Count II claim for negligence against DiBiaso. *Id.* The Court denied the motions to dismiss Hernandez's Count I claim for hostile environment sexual harassment pursuant to 24 C.F.R. § 100.600(a), as well her claims for assault and battery against Kusper (Counts III and IV).

Defendants now separately move to dismiss under Federal Rule of Civil Procedure 12(b)(6) Hernandez's re-pled claim for discriminatory statements pursuant to 42 U.S.C. § 3604(c), and DiBiaso moves to dismiss her re-pled negligence claim.[5] DiBiaso Mot. Dismiss; Kusper Mot. Dismiss.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

---

[5]As stated above, Kusper incorporates the arguments raised in his motion to dismiss the FAC as to the claims the Court allowed to proceed. Kusper Mot. Dismiss at 2. Because he does not make new arguments regarding those claims, the Court adopts its holding and reasoning from its earlier Order and addresses only Defendants' arguments related to Hernandez's re-pled claims.

6

Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I.      Count I: FHA Discriminatory Statements Against Both Defendants

In Count I, Hernandez alleges that Defendants violated the FHA by committing discriminatory housing practices, including discriminatory statements in violation of 42 U.S.C. § 3604(c) of the FHA. SAC ¶ 114. Hernandez alleges that Kusper is directly liable and DiBiaso is both directly and vicariously liable for the discriminatory housing practices. *Id*. ¶ 116.

Section 3604(c) makes it unlawful, "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c). To state a claim under Section 3604(c), a plaintiff

must allege that a defendant: (1) made a statement; (2) the statement was made with respect to the sale or rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination against a protected group. *White v. U.S. Dep't of Hous. & Dev.*, 475 F.3d 898, 904 (7th Cir. 2007). Oral statements made in connection with the sale or rental of a dwelling are within the scope of Section 3604(c). *Id.* (citing 24 C.F.R. § 100.75(b)).

Before proceeding, the Court must provide some context for the current motion. Recall that before the Court is Hernandez's SAC. In her prior complaint, Hernandez also alleged that the Defendants violated § 3604(c) by their discriminatory conduct. Defendants moved to dismiss the FAC, arguing that the complaint failed to state a claim under § 3604(c). The Court agreed. *See* FAC Order. The Court found that Hernandez failed to point to any statements made in connection with the rental of the apartment. *Id.* at 8. In fact, the FAC was devoid of any allegations regarding any statements that Kusper made to Hernandez in connection with the rental of the apartment. *Id.* Along those lines, the Court found that Hernandez did not allege that Kusper or DiBiaso made any threats of eviction should she refuse to submit to Kusper's advances. *Id.* at 9. The Court, however, granted Hernandez leave to file an amended complaint, which Hernandez did with the SAC. *Id.* at 19–20; SAC.

Defendants argue that the SAC still fails to state a claim under the § 3604(c) because Hernandez still fails to allege that Kusper made any discriminatory statements with respect to the sale or rental of the apartment. Kusper Mot. Dismiss at 3; DiBiaso Mot. Dismiss at 2. Citing the Court's prior order dismissing this claim

in the FAC, Kusper argues that because his "statements were made *after Hernandez moved into the apartment and are not related to the rental of the apartment*, Hernandez's claim for discriminatory statements under Section 3604(c) fails and [must be] dismissed." Kusper Mot. Dismiss at 3–4 (quoting FAC Order at 10) (emphasis in Motion).

Hernandez counters that she has adequately alleged a Section 3604(c) claim because Kusper made discriminatory statements while he was engaged in an ongoing rental of her apartment, and Section 3604(c) covers post-acquisition conduct. R. 108, Resp. at 8–9 (citing, *inter alia, Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009); *Wetzel v. Glen St. Andrew Living Cmty., LLC,* 901 F.3d 856, 861 (7th Cir. 2018); *United States v. Space Hunters, Inc.*, 429 F.3d 416, 424 (2d Cir. 2005)). Hernandez argues that the Court's narrow interpretation of § 3604(c) is not justified by the statutory text or case law. *Id.* at 8. The FHA, notes Hernandez, was enacted to eradicate discriminatory practices in housing and both the Supreme Court and the Seventh Circuit have recognized that the FHA should be given "a generous construction to effectuate its broad and inclusive" language. *Id.* at 9 (citing *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 539 (2015); *Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 616 F.2d. 1006, 1011 (7th Cir. 1980) (quoting *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972)). Hernandez posits that to limit the reach of § 3604(c) to pre-acquisition statements "would mean that a landlord could subject to tenant to vile, discriminatory remarks, so long as they waited until the tenant moved in." *Id.* at 11.

9

To include a temporal limitation not contained in the statute, reasons Hernandez, is inconsistent with the spirit of the FHA and is contrary to the FHA's broad and inclusive language. *Id.* at 10 (citing *Richards v. Bono*, 2005 WL 1065141, at *3 (M.D. Fla. May 2, 2005)). Moreover, Hernandez contends that numerous courts have rejected the idea that § 3604(c) pertains only to pre-acquisition discriminatory statements. Resp. at 10 (citing *Hous. Rts. Ctr. v. Donald Sterling Corp.*, 274 F. Supp. 2d 1129, 1142 (C.D. Cal.), *aff'd sub nom. Hous. Rts. Ctr. v. Sterling*, 84 F. App'x 801 (9th Cir. 2003); *Wentworth v. Hedson*, 493 F. Supp. 2d 559, 566 (E.D.N.Y. 2007); *Richards*, 2005 WL 1065141, at *7).

From Hernandez's point of view, Kusper was "engaged in the rental" of her unit not only at the beginning, but throughout her tenancy. Resp. at 9. Hernandez points out that she alleges, among other things, that Kusper showed her the apartment, selected her to be the tenant, signed the lease, collected her rent, and eventually served her with the eviction notice. *Id.* The way Hernandez sees it, these allegations are sufficient at this juncture to survive dismissal. *Id.* Hernandez maintains that under the FHA both DiBiaso and Kusper are liable for Kusper's discriminatory housing practices. Resp. at 13–14.

In Reply, Kusper argues that Hernandez conflates Sections 3604(c) and 3604(b) of the FHA. R. 113, Kusper Reply at 1. To that end, Hernandez's reliance on case law dealing with § 3604(b) to support her arguments regarding § 3604(c) is misplaced. *Id.* at 2. From Kusper's perspective, discrimination in the terms, conditions, privileges, or provisions of services or facilities in connection with the

10

rental of a dwelling is different than discriminatory statements with respect to the sale or rental of a dwelling. *Id.* The former is covered by § 3604(b); the latter by § 3604(c). *Id.*

Similarly, DiBiaso posits in Reply that Section 3604(c) is to be interpreted narrowly to statements made in the rental or sale of a dwelling context. R. 119, DiBiaso Reply at 2. DiBiaso maintains that Hernandez essentially concedes that no discriminatory statements were made with respect to the sale or rental of the unit, since she argues that Kusper made statements to her *after* she moved in. *Id.* And, even assuming that post-acquisition statements are actionable, posits DiBiaso, the statements alleged by Hernandez do not qualify, as they are vague, personal, and unrelated to tenancy. *Id.*

The Court begins its analysis, as it must, with the text of 42 U.S.C. § 3604(c), which, as stated above, makes it unlawful to:

> make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604(c).

"The language of the [FHA] is broad and inclusive." *Trafficante*, 409 U.S. at 209. The Court reads the statute "as a whole" rather than "as a series of unrelated and isolated provisions." *Arreola-Castillo v. United States,* 889 F.3d 378, 386 (7th Cir.

11

2018) (cleaned up).[6] "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *U.S. v. Venture, Inc., v. United States*, 2 F.4th 1034, 1037 (7th Cir. 2021) (quoting *Davis v. Mich Dep't of Treasury*, 489 U.S. 803, 809 (1989)). On its face, the statue is unambiguous and the parties do not argue otherwise. Section 3604(c) makes it unlawful to make, print, or publish any statement or advertisement with respect to the sale or rental of a dwelling. The *sine qua non* of a Section 3604(c) claim, therefore, is a statement, oral or written *with respect to the sale or rental of a dwelling*. On the other hand, as Defendants point out, Section 3604(b) more broadly prohibits discrimination related to "the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith." 42 U.S.C. § 3604(b).

As noted above, Hernandez takes the position that all of the post-acquisition discriminatory statements made by Kusper are covered by Section 3604(c). The Court finds that these arguments set up two questions for the Court's consideration—whether § 3604(c) encompasses: (1) any and all discriminatory statements made by Kusper during Hernandez's tenancy; and (2) *any* post-acquisition statements related to the rental. For the following reasons, the Court finds that the answer to the first question is "no," while the answer to the second question is "yes." Many cases cited by the parties touch on both questions.

---

[6]This Order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

12

The first case Hernandez cites, *Bloch v. Frischholz*, 587 F.3d. 771 (7th Cir. 2009), was not a Section 3604(c) case at all (which Hernandez acknowledges), but rather one brought under Sections 3604(a) and (b). Section 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). And, as stated above, Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." *Id.* § 3604(b). In *Bloch*, the Jewish plaintiffs sued their condominium association after the association applied a policy prohibiting any "objects of any sort outside Unit entrance doors." *Bloch*, 587 F.3d at 785. The plaintiffs argued that the rule made the condos "unavailable to them and other observant Jews because their religion requires that they be able to affix mezuzot to their doorposts." *Id.* at 777.

The Seventh Circuit found that both FHA Sections at issue reached post-acquisition discriminatory conduct. Specifically, the court looked at the text of Section 3604(a) and found that, because the language "otherwise make unavailable or deny" was "not tethered to the words 'sale or rental' that constrain the other two § 3604(a) clauses, . . . § 3604(a) may reach post-acquisition discriminatory conduct that makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction." *Bloch*, 587 F.3d at 776. It found, nonetheless, that the discrimination did not make

13

the condos "unavailable" to the plaintiffs because the plaintiffs never moved out. *Id.* at 778. As to Section 3604(b), the court found that Section 3604's use of the terms "privileges" and "conditions" refer not just to the sale or rental itself, but also to certain benefits or protections flowing from and following the sale or rental. *Id.* at 779–80. The court remanded the case to the district court to determine whether the plaintiffs produced sufficient evidence of discrimination, which it held could support a § 3604(b) claim. *Id.* at 781. The court's analysis, which was tied closely to the language of each Section of the FHA, suggests that, contrary to Hernandez's suggestion, the discriminatory statements must relate to the "sale or rental" of her apartment.

Surprisingly, no party addresses *Bloch*'s discussion of the Section 3604(a) claim (indeed, Hernandez only mentions its discussion of Section 3604(b), Resp. at 8 n.2). Given *Bloch* is binding precedent, however, the Court finds a further analysis is necessary. As stated above, the Seventh Circuit found a post-acquisition constructive eviction-type claim could proceed under Section 3604(a) because the language "otherwise made unavailable or deny" was "not tethered to the words 'sale or rental' that constrain the other two § 3604(a) clauses." *Bloch*, 587 F.3d at 776. Of course, Section 3604(c) only relates to discriminatory statements made "with respect to the sale or rental of a dwelling," which would suggest in context that it cannot encompass post-acquisition statements. 42 U.S.C. § 3604(c). Section 3604(a) includes additional constraints related to the "sale or rental," however, which are not included in Section 3604(c). Specifically, Section 3604(a) includes the language, "[t]o refuse to sell or rent

14

*after the making of a bona fide offer*, or *to refuse to negotiate for* the sale or rental of . . . a dwelling . . . ." 42 U.S.C. § 3604(a) (emphases added). That additional language suggests that the discrimination must be connected to the initial, pre-acquisition sale or rental. Without any argument from the parties on this issue, the Court declines to find that *Bloch* forecloses claims under § 3604(c) based on post-acquisition discriminatory statements where the plain language of § 3604(c) does not include anything about "bona fide offers" or "negotiations." Indeed, as the Seventh Circuit stated in a later case, in *Bloch* it was "addressing the case before [it], and so [it] simply noted . . . 'two possibilities for relief in [the present] case.'" *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 866 (7th Cir. 2018) (quoting *Bloch*, 587 F.3d at 779). That said, the Court also does not find that *Bloch supports* a finding that Section 3604(c) (as opposed to Sections 3604(a) and (b)) encompasses post-acquisition discrimination.

The next case cited by Hernandez, *Wetzel, LLC,* 901 F.3d at 861, another Section 3604(b) case, also fails to support her sweeping contention that a claim under 42 U.S.C. § 3604(c) need not contain a statement with respect to the sale or rental of a dwelling. In *Wetzel*, the plaintiff alleged that she was subjected to physical and verbal abuse from other residents because she was openly gay and that her landlord, the defendant, failed to address the harassment. 901 F.3d at 861. The Seventh Circuit held that Section 3604(b), together with 42 U.S.C. § 3617, prohibit discriminatory harassment that unreasonably interferes with the use and enjoyment of a home—by another name, a hostile housing environment. *Id.* The court held that the FHA

15

creates liability not only when a landlord intentionally discriminates against a tenant based on a protected characteristic but also against a landlord that has actual notice of tenant-on-tenant harassment based on a protected status yet chooses not to take any reasonable steps within its control to stop the harassment. *Id.* The court rejected the defendant's argument that Section 3604(b) does not encompass post-acquisition conduct, finding that the language in that Section, protecting discrimination "'in the provision of services or facilities in connection [with the sale or rental]' . . . naturally encompasses conduct that follows acquisition." *Id.* at 867 (quoting 42 U.S.C. § 3604(b)). Section 3604(c) contains no such language.

The Court next examines the out-of-Circuit cases cited by Hernadez. In *Donald Steling Corp.*, the court granted tenants a preliminary injunction where the plaintiffs-tenants established a likelihood of success on the merits of their § 3604(c) claim alleging discrimination on basis of national origin where the defendants-building owners required current tenants to complete an application containing questions about birthplace and citizenship in order to obtain a remote control to open the previously available building garage. 274 F. Supp. at 1134, 1142–43. The court rejected the defendants' argument that the "place born" question on the application did not fall within Section 3604(c) because "it is directed to existing tenants, not prospective tenants, and because it relates to a particular service, not to sale or rental." *Id.* at 1142. The court reasoned that, "[c]ertainly a discriminatory statement made with respect to such services or facilities violates § 3604(c), even if not made at the moment of first sale or rental. Defendants' proposed distinction is inconsistent

16

with an appropriately broad reading of the statute and makes little sense given that tenants denied garage access to which they previously were entitled are effectively denied the full benefit of the bargain entered into at the moment of first sale or rental." *Id.*

And, as the Court noted in its Order on the FAC, Hernandez points to several out-of-Circuit cases that allowed Section 3604(c) claims to proceed where the tenant's occupancy was made expressly conditional upon submission to harassment or discrimination by the landlord. FAC Order at 9 (citing *Wentworth*, 493 F. Supp.2d at 562; *Richards*, 2005 WL 1065141, at *7; *Glagola v. MacFann*, 701 F. Supp. 3d 274, 278 (W.D. Pa. 2023)). Specifically, the court in *Wentworth* allowed a Section 3604(c) claim to proceed where the plaintiffs alleged that the defendant-landlords "unlawfully interfered with their housing rights by harassing them, disturbing the quiet enjoyment of their apartment, and instituting eviction proceedings against them because they associated with people of African American or African Caribbean descent." 493 F. Supp. 2d at 561. The court rejected the defendants' argument that Section 3604(c)'s protections are "limited to housing transactions or to prospective tenants." *Id.* at 566. In *Richards*, most of the court's analysis related to the plaintiff's Section 3604(b) claim, but, in a short discussion, it allowed the plaintiff's Section 3604(c) claim to proceed where the defendant-landlord "told the Plaintiff that she would be evicted if she did not keep quiet about his sexually hostile behavior," finding such an allegation "sufficient to allege that [the landlord] orally expressed that submission to his sexual advances was a condition of continued occupancy." 2005 WL

17

1065141, at \*7. Similarly, in *Glagola,* the court allowed the plaintiff's Section 3504(c) claim to proceed where she alleged that the defendant sexually harassed her and "threatened her with homelessness if she stopped having sex with him," finding that the landlord "made those statements in connection with [the plaintiff's] lease and an ordinary listener could find that they amounted to discrimination based on her sex." 701 F. Supp. 3d at 278, 282. While these cases are persuasive only, in the absence of on-point Seventh Circuit authority, the Court finds that such a reading is consistent with the purpose of the FHA to eradicate discriminatory practices in housing and the Supreme Court and Seventh Circuit's mandate that the FHA should be given "a generous construction to effectuate its broad and inclusive" language. *See Inclusive Communities Project*, 576 U.S. at 539; *Metropolitan Housing Development Corp.*, 616 F.2d. at 1011.

The Court finds that the SAC adequately alleges that her continued tenancy was conditional upon submission to harassment by Kusper. Unlike in her FAC, which the Court found did not allege that Kusper or DiBiaso made any threats of eviction should she refuse to submit to Kusper's advances, she does so in the SAC. Specifically, the FAC alleges that Kusper texted Hernandez, telling her that DiBiaso was asking him about evicting her, and also telling her that he was trying to protect her, saying "[d]o you not understand that I am your friend if you talk to me I could f\*\*\*\*\*\* fix everything." SAC ¶¶ 105–06. The next text Kusper sent to Hernandez said, "I just want to see you . . . ." *Id.* ¶ 107. Kusper eventually served a notice of eviction on Hernandez, telling Hernandez that DiBiaso "told me I have to give this to you." *Id.*

18

¶ 109. A reasonable inference from these allegations is that, if Hernandez "talked" to or saw Kusper (given the context, in a sexual manner), he could "fix everything," meaning her potential eviction. Accordingly, Hernandez has alleged that Kusper—and, vicariously, DiBiaso—made a statement, with respect to the rental of the dwelling to Hernandez, indicating discrimination on the basis of gender.

To the extent that *Donald Steling Corp.*, *Wentworth*, *Glagola*, or any other case cited by Hernandez case can be read more broadly to hold, or otherwise find, that discriminatory statements generally—rather than the ability to rent an apartment itself—violate Section 3604(c), the Court respectfully disagrees with that proposition. As discussed above, *Bloch* requires the Court to give effect to the plain language of the statute, so the Court cannot ignore Section 3604(c)'s limitation of statements "with respect to the sale or rental." 587 F.3d at 776. The plain text of the statute and its regulatory interpretation suggest that Section 3604(c) applies only to those statements made in direct relation to the rental of a unit itself, and not to *any* discriminatory post-acquisition statements made by a landlord or rental agent. *See e.g., White*, 475 F.3d at 902, 904–907 (discriminatory statements made when a prospective tenant called to inquire about a rental property fall under the purview of § 3604(c)); *Space Hunters*, 429 F.3d at 420, 425 (2d Cir. 2005) (same); *Torres v. Rothstein*, 2020 WL 7696084, at *2 (D. Nev. Dec. 26, 2020) (harassing statements made during the rental process and harassing rental documents fall under the purview of the statute); *Fair Hous. Ctr. of Cent. Indiana, Inc. v. New*, 577 F. Supp. 3d 908, 925 (S.D. Ind. 2021) (Section 3604(c) claim failed where nothing raised "even an

19

inference that [neighbor's] statements were made in connection with the sale or rental of a dwelling"); *Small v. The Anchorage Homeowners Ass'n, LLC*, 2019 WL 1317636, at *5 (S.D. Ind. Mar. 21, 2019) ("Plaintiffs fail to state a claim under § 3604(c) because they have not alleged there were any discriminatory statements made in connection to a sale or rental" where they did not allege that they tried to engage defendant-realtor to help them find a dwelling).

While Hernandez posits that it is inconceivable that the reach of § 3604(c) to pre-acquisition statements or to statements made in the context of rentals, "would mean that a landlord could subject to tenant to vile, discriminatory remarks, so long as they waited until the tenant moved in," Resp. at 11, such conduct is covered by a different provision, § 3604(b), *see Ga. State Conf. of the NAACP v. City of LaGrange*, 940 F.3d 627, 632 (11th Cir. 2019).

In sum, the court finds that Hernandez has sufficiently stated a claim under 42 U.S.C. § 3604(c) based on her allegations that she must acquiesce to Kusper's harassment to avoid eviction. Hernandez argues that Kusper is liable for his own discriminatory statements. Resp. at 13 (quoting 24 C.F.R. § 100.7(a)(1)(i) (a "person is directly liable for [t]he person's own conduct that results in a discriminatory housing practice.")). As Hernandez points out in her Response, DiBiaso does not address his own liability under Section 3604(c). Resp. at 13–14. According to Hernandez, DiBiaso is both directly and vicariously liable for Kusper's discriminatory practices. *Id.* The Court agrees that Kusper fails to address his liability under § 3604(c) in his motion to dismiss the SAC, and therefore has waived the argument.

20

*See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("a party waives an argument by failing to make it before the district court," including "affirmative argument[s] in support of a motion to dismiss"). To the extent DiBiaso relies on his arguments against vicarious liability as to the negligence claim, the Court finds those unpersuasive for the reasons explained below. Accordingly, for now, the claim may proceed against both Kusper and DiBiaso.

## II.     Count II: Negligence Against DiBiaso

In Count II, Hernandez asserts a negligence claim against DiBiaso, on three bases: (1) because he was Kusper's employer, he "had a duty to refrain from employing an individual that knew posed a danger to others"; (2) because "Kusper was DiBiaso's agent, DiBiaso owed a duty to reasonably prevent those under his control from committing tortious conduct while on his premises"; and (3) "because as Hernandez's landlord, [DiBiaso[7]] owed Hernandez a duty to take reasonable care to prevent other tenants from interfering with Hernandez's use and enjoyment of property." SAC ¶¶ 119–126. According to Hernandez, DiBiaso breached each of those duties, which harmed her. *See id.* ¶¶ 118–127.

To state a claim for negligence under Illinois law, a plaintiff must allege: (1) a duty owed to the plaintiff by the defendant; (2) breach of that duty; and (3) injury proximately resulting from the breach. *Widlowski v. Durkee Foods, Div. of SCM Corp.*, 562 N.E.2d 967, 968 (Ill. 1990). DiBiaso argues that Hernandez's negligence

---

[7]The SAC alleges "Kusper" was Hernandez's landlord in this paragraph. SAC ¶ 125. Based on the context of the SAC, the Court understands this to be a typo.

claim fails because Hernandez fails to adequately allege that he owed her a duty of care under any of her three theories. DiBiaso Mot. Dismiss at 8–13.

"Duty is a question of whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Turner v. N. Illinois Gas Co.*, 930 N.E.2d 418, 425 (Ill. App. Ct. 2010) "In determining whether a duty exists, a court looks to certain relevant factors, including: (1) the reasonable foreseeability that the defendant's conduct may injure another; (2) the likelihood of an injury occurring; (3) the magnitude of the burden of guarding against such injury; and (4) the consequences of placing that burden on the defendant." *Id.*

The Court starts with Hernandez's allegation that DiBiaso was Kusper's employer and therefore had a duty to reasonably refrain from employing an individual that he knew posed a danger to others, which he breached when he retained Kusper as an employee even after he was informed of the danger Kusper posed to others. SAC ¶¶ 119–120. As Hernandez points out, the Illinois Supreme Court has "recognized a duty to a third party to control the individual who is the source of the harm when a defendant has a special relationship with that person, such as . . . a master-servant or employer-employee relationship." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1098 (Ill. 2012). To hold an employer directly liable, the employer must have the ability to control his employee and know it is necessary to exercise such control. *Id.* "An employer's direct liability for negligent hiring and

retention is distinct from its *respondeat superior* liability for the acts of its employees." *Van Horne v. Muller*, 705 N.E.2d 898, 905 (Ill. 1998).

The SAC alleges that Kusper served as DiBiaso's onsite property manager, performed typical property management tasks, and that DiBiaso compensated Kusper for his work by not charging Kusper market-rate rent. SAC ¶¶ 12–20, 24–26, 31–39, 24–26. The SAC also alleges that Hernandez and her mother told DiBiaso about Kusper's harassment. *Id.* ¶¶ 90, 94. Finally, the SAC alleges that DiBiaso could have exercised control over Kusper by evicting him and/or replacing him as the onsite property manager, but he chose not to. *Id.* ¶¶ 98–99. DiBiaso attacks this claim by attempting to place a higher burden on Hernandez than Rule 8 requires.

That is, DiBiaso ignores Hernandez's allegations related to Kusper's alleged work at the Property as a property manager and his payment via below-market rent, arguing that Hernandez's allegations that Kusper was his employee are "conclusory" and "lack factual support." DiBiaso Mot. Dismiss at 9–10. He also contends that, because Hernandez pleads that DiBiaso compensated Kusper for his work with below-market rent "on information and belief," those claims should be viewed skeptically. *Id.* at 10 (citing *Zeikos Inc. v. Walgreen Co.*, 2023 WL 3947775, at *4 (N.D. Ill. June 12, 2023)). The Court agrees with Hernandez that her allegations are sufficient that DiBiaso was Kusper's employer. And for non-fraud claims, the court in *Zeikos* found that "factual allegations pleaded on information and belief are accepted if the facts are peculiarly within the possession and control of the defendant or the belief is based on factual information that makes the inference of culpability

23

plausible." 2023 WL 3947775, at *4 (cleaned up); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) ("When a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying, but acknowledging that his allegations are based on secondhand information that [he] believes to be true." (cleaned up)). It is logical that the amount of rent DiBiaso charged Kusper in exchange for property-management services is within Defendants' possession. Simply because Hernandez alleged their rent payment arrangement "on information and belief" does not undermine the allegation at this stage. Finally, DiBiaso's argument that the SAC is confusing because Hernandez refers to Kusper both as an "employee" and a "tenant" is also unavailing—both things can be true, and the SAC adequately alleges that Kusper was a property manager employed by DiBiaso who lived on-site at the Property, making him a tenant, as well. *Id.*

Even if the Court finds that Hernandez adequately pled that DiBiaso was Kusper's employer, argues DiBiaso, her negligence claim fails because she did not establish that DiBiaso knew that Kusper was dangerous or that he posed a danger to anyone. Mot. Dismiss at 10 (citing *Van Horne*, 705 N.E.2d at 904 ("Illinois law recognizes a cause of action against an employer for negligently hiring, or retaining in its employment, an employee it knew, or should have known, was unfit for the job so as to create a danger of harm to third persons.")). As stated above, the SAC alleges that both Hernandez and her mother complained to DiBiaso about Kusper's harassment, undermining DiBiaso's argument that he did not know Kusper was

24

dangerous. And DiBiaso cites no cases that stand for the proposition that sexual harassment is not "dangerous" and therefore has waived the argument. *See* Mot. Dismiss at 10; *G & S Holdings*, 697 F.3d at 538.

To the extent that DiBiaso argues that he had no control over Kusper for purposes of holding DiBiaso directly liable for negligently retaining Kusper, the Court agrees with Hernandez that she has adequately pled that DiBiaso could have exercised control over Kusper by evicting him and/or replacing him as the onsite property manager, but he chose not to. Resp. at 16 (citing SAC ¶¶ 98–99). Hernandez has also pled that she was harmed by Kusper's continued employment as the property manager, based on his continued harassment. *See* SAC ¶¶ 111–112, 121. Accordingly, the Court finds that Hernandez has adequately pled a negligence claim against DiBiaso based on his negligent retention of Kusper as his employee.

The Court need not engage with DiBiaso's arguments as to Hernandez's other two theories supporting her negligence claim (principal-agent relationship and landlord-tenant relationship); as the Seventh Circuit has stated, "complaints need not set out either legal theories or comprehensive factual narratives . . . . Under Fed. R. Civ. P. 8 a complaint pleads *claims,* which is to say grievances." *Rapid Test Prods., Inc. v. Durham Sch. Servs., Inc.*, 460 F.3d 859, 860–61 (7th Cir. 2006); *see also Simpson v. CSX Transportation, Inc.*, 2016 WL 7425879, at *2 (S.D. Ill. Dec. 23, 2016) (the defendant "is attempting choose the legal theories [the plaintiff] may pursue under the guise of a Rule 12(b)(6) motion to dismiss for failing to state a claim. [The plaintiff] either pleaded sufficient facts to state a claim under [the Federal Employer's

25

Liability Act] or he did not."); *c.f. McKee ex rel. Schoeff v. Frantz*, 2012 WL 589358, at *5 (N.D. Ind. Feb. 22, 2012) ("[P]leading negligence does not require much in the way of factual assertions.").

## Conclusion

For the foregoing reasons, the Court denies DiBiaso's and Kusper's motions to dismiss [95], [97] as to Count I, regarding discriminatory statements pursuant 42 U.S.C. § 3604(c) and Count II, for negligence. And for the same reasons stated in the Court's Order denying in part and granting in part the FAC, the Court denies Kusper's motion to dismiss the Count I to the extent it alleges "hostile environment sexual harassment" pursuant to 24 C.F.R § 100.600(a), as well as the motion to dismiss the assault and battery claims alleged in Counts III and IV.


Date: March 23, 2026

United States District Judge
Franklin U. Valderrama


26